EDWARD SPENCER et al.

v.

ROSA B. SPRUELL.

*Opinion filed April 16, 1902.*

1. APPEALS AND ERRORS—*decree entered in accordance with verdict on issues of mental capacity and undue influence, not lightly disturbed.* A decree entered in accordance with the verdict of a jury upon the issues of mental capacity and undue influence will not be set aside as to such findings unless they appear from the record to be clearly against the weight of the evidence.

2. DEEDS—*effect of first taker's refusal to accept deed creating a fee tail at common law.* If the party to whom a deed to her "and the heirs of her body" is made refuses to accept the deed, no estate vests, and the "heirs" have no interest under the deed against which parties in whom the title is subsequently vested by a decree of court would need to be protected, since the statute changing a fee tail to a life estate with remainder in fee only operates when any person "might hereafter become *seized* in fee tail of any estate in lands," etc.

APPEAL from the Circuit Court of White county; the Hon. P. A. PEARCE, Judge, presiding.

This was a bill in chancery, filed by the appellee in the circuit court of White county, to set aside a certain division and transfers of the property of Joseph Spencer, deceased, made about two months before his death, on the grounds of his alleged mental incapacity, and undue influence by some of the beneficiaries.

Joseph Spencer died intestate about October 14, 1900, at about the age of eighty-four years. He had been afflicted, as alleged in the bill, both bodily and mentally, for the six months preceding his death. He left him surviving his widow, Nancy Spencer, and eight children, viz., Edward, Frank V., George W. and Joseph J. Spencer, his sons, and Mary A. Hanks, Sarah Hodgson, Martha Hill and Alma Goodman, his daughters, and two grandchildren, descendants of two pre-deceased children, viz.,

Chauncey Spencer and the complainant, Rosa B. Spruell. The widow, children and grandchildren were all made parties to the bill. Several years before the division in question Joseph Spencer had made advancements to all of his children above named, and to his grand-son, Chauncey Spencer, but none to his grand-daughter, Rosa B. Spruell, the complainant. On August 8, 1900, a justice of the peace was called to the house of Joseph Spencer, and together with seven of the children, Martha Hill not being present, they proceeded to divide up about $14,000 worth of notes and mortgages belonging to Joseph Spencer, among those present. Seven deeds of assignment were prepared by the justice of the peace and presented to Mr. Spencer for his signature that evening, but on account of his inability to get up at that time the signing was delayed till the next morning, at his request. They were not read to him, nor was he told what particular note and mortgage had been assigned to any particular child. He was told that the seven had got about $2000 apiece, and to this division he expressed assent. In this division no notice was taken of Martha Hill, Chauncey Spencer nor Rosa B. Spruell. It was subsequently discovered that all the property had not been divided and that the division was not properly made, and so a banker was called in about a week later to make another division. At this time Martha Hill appeared and was present and insisted on getting her share of the property. The figuring and dividing was done in a room adjoining the one in which Mr. Spencer was, because he said that it worried him to have it done in his presence. In this division the prior advancements and interest items were considered, but no account was taken of any claims of the grandchildren, and it does not appear that they had any notice of the proposed division. Ample provision had been made for and to the satisfaction of Nancy Spencer, the wife of Joseph Spencer. The circuit court found that, including advancements, the eight

children had received amounts varying from $8261.33 to $9169.40; that Chauncey Spencer had received $6250 and Rosa B. Spruell nothing.

About the time of this division, August 13, 1900, three of the sons, Edward, Frank and George, received, as they testified, $4000 from their father to invest in a farm for Rosa B. Spruell, and with this money they bought from Adam Johnson the east half of the south-east quarter of section 33, township 2, south, range 9, east, and the north half of the north-east quarter of section 4, and the north half of the south-west quarter of the north-east quarter of section 4, township 3, south, range 9, east of the third principal meridian, lying in Wayne county, Illinois, containing about one hundred and eighty acres, and took a statutory warranty deed therefor from Johnson to "Rosa B. Spruell and the heirs of her body," which deed contained the following clauses, after the description of the property: "If, however, any of the heirs of the body of the said Rosa B. Spruell shall die without issue, then and in that case the title to his portion of said land shall vest in his surviving brothers and sisters, and in case all of the heirs of the body of the said Rosa B. Spruell shall die without issue, then and in that case the title to said land shall vest in the heirs of Joseph Spencer, grandfather of said Rosa B. Spruell. The purchase money of the above described land is paid by Joseph Spencer, and this conveyance shall be considered, and is, in full of the grantee's portion of the estate of Joseph Spencer." They had the deed recorded, but complainant below refused to accept it, saying that the land was not worth what was paid for it.

It appears from the evidence that Joseph Spencer had had a paralytic stroke on April 7, 1900, from which time his health and mental capacity were impaired. He could not talk well after that, but gradually recovered somewhat, and could transact ordinary business with assistance. About August 2,—shortly before making the

division,—he had a second stroke, which confined him to his bed permanently. The testimony as to his mental capacity for the whole of this time and up to his death was very conflicting.

The court submitted to a jury the two issues of fact whether Joseph Spencer was of sufficient mental capacity to make a division of his property at the time it was done, and whether any undue influence was used upon him by any of the beneficiaries against the interests of the complainant. The jury found the first issue in the negative and the second in the affirmative, thus finding not only that he was mentally incompetent, but also that he was unduly influenced. The three sons who purchased the Wayne county land for Mrs. Spruell then (after motion for a new trial was overruled) filed their stipulation, whereby they agreed to take that land and pay the $4000 into the estate for distribution as the court should direct, provided the court could and would vest them with a clear title to the land, free from any claims or interests of Rosa B. Spruell, her husband, the heirs of her body, or the grantor, Adam Johnson. Such stipulation was not to be binding in case of a reversal of the decree. Appellee thereupon amended her bill accordingly, and made her husband, and Adam Johnson, the grantor, parties. The new parties came in and issues were made on the amended bill.

In the final decree the court found that, including the $4000 paid for the Wayne county land and the advancements and distributions, but excluding the amount received by the widow, the value of the estate was $78,-205.11, and that the appellee, Rosa B. Spruell, was entitled to receive one-tenth of that amount, or $7820.51, and that Chauncey Spencer was entitled to $1570.51 in addition to what he had already received. The court then decreed that each of the heirs who had received more than the one-tenth of said total amount should pay the overplus into court, and the clerk was ordered to pay

the two grandchildren out of such money the amounts found due them, the widow having elected to accept the amount received by her in full of her dower, widow's award and share in the estate. It was further ordered that Edward, Frank and George Spencer pay into court the sum of $4000, and that the title in fee simple absolute to the Wayne county lands vest in them, and that all interests of the grantor and of the appellee and her husband be vested in them, and that a copy of the decree be filed in the proper recorder's office and operate as a deed of conveyance. From this decree the four sons and Alma Goodman and Mary A. Hanks have appealed to this court.

C. S. CONGER, and J. C. PEARCE, for appellants.

CREIGHTON, KRAMER & KRAMER, and W. T. BONHAM, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

After a careful consideration of this case we are convinced that the decree ought to be affirmed. While we have considered all of the questions raised by appellants there are but two necessary to be mentioned: First, it is contended that the findings of the trial court on the questions of the alleged mental incapacity of Joseph Spencer and of undue influence exercised over him are against the weight and preponderance of the evidence; second, that the decree does not sufficiently establish and protect in appellants Edward, George and Frank Spencer the title to the Wayne county land in accordance with their stipulation, by which they agreed to take title to said land and pay to the estate the $4000 which Joseph Spencer had advanced for its purchase, and that it was error to require them to pay said $4000 to the estate without vesting in them a good title in fee simple absolute.

As to the first question, it is sufficient to say that it does not appear that the findings are against the weight

or preponderance of the evidence. Nearly fifty witnesses were examined upon the questions submitted to the jury, and as usual in such cases there was an irreconcilable conflict in their testimony. Joseph Spencer was upwards of eighty-three years of age, and had within a few months been twice stricken with paralysis, when the division and transfers sought to be set aside were made. All the witnesses agreed that he was physically unable himself to perform the labor necessary to ascertain the amount of the principal and interest due on the notes and mortgages and the amount to be assigned to each of his children. He was confined to his bed, and so weak and helpless that he could not bear the worry which the calculation and figuring up in his presence of the different amounts, and the discussions incident thereto, caused him, and it was necessary for appellants and others engaged in that work to repair to an adjoining room, and when the assignments and transfers were prepared he was lifted from his bed to execute them, and although he could write when in health, his name was signed by others and he could only make his mark. We are satisfied, also, from the entire evidence, that his mind had become impaired to some extent from his disease and age, and the only doubt upon this question is as to the extent of this impairment. The chancellor adopted the verdict of the jury, and we cannot, from the evidence in the record, say that the finding was not a proper one and fully sustained by the evidence. Nor can it be said, reasonably, that the finding that the division and transfers were obtained by the beneficiaries, or some of them, by undue influence exerted over Joseph Spencer, was not authorized by the evidence. The division seems to have been agreed on by at least six of them, and was practically made by them, and in the absence and without the knowledge of the complainant in the bill. Martha Hill, one of the daughters of Joseph Spencer, was also absent and was excluded from any share in the first attempted division, and it is

clear from the evidence she would have been excluded from the final one had she not learned of it and appeared on the scene and insisted on having an equal share in the estate. It is a significant fact that it does not appear from the evidence that the donor was not as well satisfied with the division leaving his daughter Martha Hill unprovided for as with the later one giving her a full share, and that when she came to her father's house at the time, her contentions that she should share with the others in her father's bounty were not addressed to her father, but to her mother and her unwilling brothers. It appears, also, that Joseph Spencer executed, without question, every paper presented to him for his signature, —not only those making the final division, but also the previous ones found to be incorrect and for which the final ones were substituted; also, that he executed these assignments and transfers without reading or having them read to him, and that he did not know what property was assigned to each of his children or to any one of them. But further comment on the facts is unnecessary, inasmuch as we, after full consideration of them all, are of the opinion that they fully sustain the finding of the court. We would not be authorized to set such findings aside unless they appeared from the record to be clearly against the weight of the evidence. *Kinnah* v. *Kinnah*, 184 Ill. 284.

Nor are we of the opinion that the decree is erroneous on the second ground urged by appellants. The deed to the Wayne county lands was made to "Rosa B. Spruell and the heirs of her body." Appellants treat this deed as giving a life estate to Rosa B. Spruell and the fee to her children, and claim that although Mrs. Spruell refused to accept the deed, yet she could not by her refusal take away from her children the title in fee which it is claimed vested in them by the delivery of the deed to Joseph Spencer and the recording of the same by him. The language of the deed is in apt words to

create a fee in Rosa B. Spruell at common law, for as the word "heir" was necessary to create a fee, so in further limitation of the strictness of the feodal donation the word "body," or some other words of procreation, are necessary to make it a fee tail and to ascertain to what heirs in particular the fee is limited. (2 Blackstone's Com. 114.) The grantee was at liberty to refuse to accept the deed, and by such refusal the intended gift of a fee tail to her, or the estate which our statute creates from a fee tail, never took effect, and the equitable title would result to Joseph Spencer, whose money paid for the land, as recited in the deed. It is true that our statute converts a fee tail into a life estate in the first taker, with the remainder in fee simple to those to whom the estate would pass according to the common law on the death of the first taker; but this statute is only operative "in cases where, by the common law, any person or persons might hereafter become seized, in fee tail, of any lands, tenements or hereditaments, by virtue of any devise, gift, grant or other conveyance." (Rev. Stat. chap. 30, sec. 6.) As Mrs. Spruell, by her refusal to accept the deed, never became seized, according to the common law, of a fee tail, the statute had nothing to operate on, and her children never had any title to be divested. They were not, therefore, necessary parties. The grantor and all the heirs of Joseph Spencer, including Mrs. Spruell, were before the court, and under the stipulation filed and the amendment to the bill the court had full power to render the decree it did.

Taking this view of the effect of the non-acceptance of the deed by Mrs. Spruell, it will be unnecessary to consider the other provisions of the deed, as they would also be inoperative.

Finding no material error in the record the decree must be affirmed.

                                                    *Decree affirmed.*