LOUISA JOHNSON *et al.*

*v.*

MARY E. FARRELL *et al.*

*Opinion filed June 23, 1905.*

1. WILLS—*undue influence must be such as to deprive testator of free agency.* Undue influence which will justify setting aside the probate of a will must have been such as to deprive the testator of his free agency, and thus render his act more the offspring of the will of another than of his own.

2. SAME—*decree on verdict of jury will not be lightly disturbed.* A decree entered in accordance with the verdict of the jury, in a will case, upon the issues of testamentary capacity and undue influence, will not be set aside upon the facts unless clearly contrary to the weight of the evidence.

3. SAME—*correct rule as to testamentary capacity stated.* The test of testamentary capacity is whether the testator, at the time of making the will, had sufficient mind and memory to understand the particular business upon which he was then engaged, and is not whether he had sufficient mental capacity to comprehend and transact ordinary business or act rationally in ordinary affairs of life.

4. INSTRUCTIONS—*when instruction as to proof of will is properly modified.* An instruction for contestants in a will case stating that subscribing witnesses must declare, on oath, that they believe the testator to have been of sound mind and memory, is properly modified, when warranted by the facts, by calling the jury's attention to the fact that under the statute the oath of a subscribing witness might consist of a deposition instead of oral testimony.

5. SAME—*when instruction as to disregarding testimony is properly refused.* An instruction is properly refused which states that "the testimony of one credible witness may be entitled to more weight than the testimony of many others, if, as to those other witnesses, you have reason to believe, and do believe, from the evidence and all the facts before you, that such other witnesses have knowingly testified untruthfully and are not corroborated by other credible *witness* or by circumstances proved in the case."

6. APPEALS AND ERRORS—*when alleged error is waived.* Failure of appellant to point out in his brief and argument what evidence was improperly admitted or excluded is a waiver of alleged error upon those grounds.

7. SAME—*record must show exception to motion for new trial in will case.* In a proceeding to contest a will the rule applicable to

suits at law prevails, in that if the bill of exceptions or certificate of evidence fails to show any exception to the overruling of the motion for new trial a court of review will not inquire into the sufficiency of the evidence to support the decree.

WRIT OF ERROR to the Circuit Court of Jersey county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

This is a bill, filed in the circuit court of Jersey county on January 8, 1903, by the plaintiffs in error, Louisa Johnson and George Farrell, against the defendants in error, Mary E. Farrell, Lucy L. Goss, wife of Oscar Goss, Charles H. Farrell, John A. Farrell and Daniel D. Goodell to set aside the probate of the will of one John Farrell, deceased, upon the alleged grounds that the testator, at the time of making his will, was not of sound mind and memory, and was unduly influenced by the defendants in error. Real estate was devised by the terms of the will. Answers were filed by all of the defendants below, except John A. Farrell, against whom default was entered. Upon the trial the jury returned a verdict, finding the instrument introduced in evidence to be the last will and testament of John Farrell, deceased. A decree was entered in accordance with the verdict, overruling the motion for new trial, ordering that the bill be dismissed at the costs of complainants, and that execution issue against them for costs. The present writ of error is sued out for the purpose of reviewing said decree.

John Farrell, the deceased testator, made his will on March 29, 1898. He died on December 17, 1900, leaving his widow, the defendant in error, Mary E. Farrell, and five children, to-wit, Lucy L. Goss, (formerly Lucy L. Farrell,) his daughter, and Charles H. Farrell and John A. Farrell, his sons, the last three being the children of said Mary E. Farrell; and also the plaintiffs in error, Louisa Johnson, (formerly Louisa Farrell,) and George Farrell, his children by a former wife. The deceased had been divorced from his first wife, and the custody of the two children, Louisa and

George, was given to the first wife. The deceased testator
had been obliged by the decree of divorce to pay to his first
wife alimony to the amount of $1500.00. She married again
after the divorce was granted. The will of John Farrell, de-
ceased, only gave $10.00 to each of the plaintiffs in error, his
two children by the first wife. All the rest of his property,
consisting of money and lands, was given by the terms of the
will to his second wife, Mary E. Farrell, and to his children
by his second wife, as above named. The will was admitted
to probate in the county court of Jersey county on January
17, 1901, and letters testamentary were granted to Daniel D.
Goodell, the person appointed in the will to act as executor.
He qualified as executor, and died during the pendency of
this litigation, and Mary E. Farrell, the surviving widow,
was appointed administratrix *de bonis non* with the will an-
nexed, and was made defendant, as such administratrix, to
the bill below, and answered the same.

SHUTT & MILLER, and EDWARD J. VAUGHN, for plain-
tiffs in error.

THOMAS F. FERNS, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court:

*First*—The case was submitted to the jury upon the two
issues, whether or not the testator, at the time of making his
will, was of sound mind and memory, and whether or not he
was induced to make the same by undue influence. It is in-
sisted on the part of plaintiffs in error that, upon these issues,
the verdict of the jury should have been in favor of the com-
plainants in the court below.

We find no evidence in the record to sustain the charge
that the testator was induced to make his will through undue
influence of the defendants in error, his second wife and her
children. He was an old man between eighty and ninety

years of age at the time of his death, and it appears that his wife, who was an active and vigorous woman, aided him during the latter part of his life in the transaction of his business. But while this was so, there is no evidence, tending to show that he made his will at her dictation. The record is utterly barren of any evidence whatever that the defendants in error, who were the children of his second wife, exercised any undue influence over him. It is true that, when he made his will, which was executed more than two years before his death, his wife, at his request, sent for Daniel D. Goodell to come out to his farm for the purpose of drawing his will. The testimony, however, of one of the main witnesses of the plaintiffs in error shows that his wife was not present when his will was signed, and when it was attested by the witnesses to it. The proof also tends to show that his wife, the defendant in error, Mary E. Farrell, was dissatisfied with the provision made by the will for herself. Although the testator, John Farrell, was an old man and suffering from sickness at the time he made his will, yet "advanced age and loss of memory do not necessarily of themselves indicate a want of capacity to dispose of property." (*Pooler* v. *Cristman,* 145 Ill. 405; *Taylor* v. *Pegram,* 151 id. 106; *Purdy* v. *Hall,* 134 id. 298; *Francis* v. *Wilkinson,* 147 id. 370). Undue influence, which will justify the setting aside of the probate of a will, must have been of such a nature as to deprive the testator of his free agency, and thus render his act more the off-spring of the will of another than of his own will. (*Francis* v. *Wilkinson, supra*). We find nothing in the testimony to indicate that John Farrell did not act as a perfectly free agent in the execution of his will.

Upon the other question whether or not the testator was of sound mind and memory when he made his will, the testimony, as is usual in such cases, is somewhat conflicting. But, after a careful examination of it, we have come to the conclusion that the jury were justified in finding that he was of sound mind and memory when he made his will. He was an

exceedingly close and careful man in money matters. He was engaged in the business of lending out his money, and taking, as security for the loans, notes and mortgages. Many witnesses testified to having business transactions with him about the time of the execution of his will, and give him credit for great shrewdness and capacity in his negotiations with them. It is unnecessary to enter into a review of the testimony upon this subject. A decree, entered in accordance with the verdict of a jury upon the issues of mental capacity and undue influence, will not be set aside as to such findings, unless they appear from the record to be clearly against the weight of the evidence. (*Spencer* v. *Spruell,* 196 Ill. 119; *Kinnah* v. *Kinnah,* 184 id. 284). The findings here do not appear to be clearly against the weight of the evidence. On the contrary, we are of the opinion that they are sustained by the preponderance of the evidence.

*Second*—It is assigned as error that the trial court erred in the admission and exclusion of evidence, but it is not pointed out in the arguments submitted to us what evidence was improperly admitted or excluded. "Where an appellant in his argument insists only upon one of several errors assigned, all others will be considered as waived." (*Keyes* v. *Kimmel,* 186 Ill. 109). As no errors are called to our attention upon this branch of the case, they will be considered as waived.

The main contention on the part of the plaintiffs in error is, that the court erred in modifying instructions, numbered 5, 6 and 13, asked by plaintiffs in error, and giving them as so modified, and in refusing to give instruction, numbered 10, asked by plaintiffs in error. Thirteen instructions, expressing every phase of the issues involved, were given to the jury in behalf of plaintiffs in error, as requested by them.

The modification of instruction 5, which is complained of, was the erasure by the trial court from the instruction, as asked, of the words: "of acting rationally in the ordinary affairs of life." There was no reversible error, committed

by the court in the modification thus made. The instruction, after being modified by the erasure in question, told the jury that, if they believed from the evidence that the testator, at the time of making the will, was so diseased mentally that he was incapable by reason of mental weakness, caused by disease, old age or other derangements, of intelligently comprehending the disposition he was making of his property, and the nature and effect of the provisions of said will, then they should find that the writing produced was not his will. The instruction, as thus modified, correctly stated the law. We have held that the real question to be submitted to the jury in cases of this kind is, not whether the testator had sufficient mental capacity to comprehend and transact ordinary business, but whether, at the time of making his will, he had such mind and memory as to enable him to understand the particular business in which he was then engaged. (*Ring* v. *Lawless,* 190 Ill. 520; *England* v. *Fawbush,* 204 id. 384). We have also said: "It cannot be said as a matter of law that because incapable of transacting ordinary business a person is incapable of making a testamentary disposition of his estate." (*Taylor* v. *Cox,* 153 Ill. 220; *Craig* v. *Southard,* 148 id. 37; *Sinnet* v. *Bowman,* 151 id. 146; *England* v. *Fawbush, supra*). In *Guild* v. *Hull,* 127 Ill. 523, we held that it was error to refuse an instruction, which told the jury that, if they believed from the evidence that the grantor in a deed had mind and memory enough to recollect the property he was about to convey, and the person to whom he wished to convey it, and the manner in which he wished it to be disposed of, and to know and understand the business he was engaged in, such person was, in contemplation of law, of sound mind, and his age or bodily infirmity would not vitiate a conveyance made by one possessing such capacity.

By instruction numbered 6, as asked by the plaintiffs in error, the jury were instructed "that under the statutes of this State it is proper to admit as evidence in this case the certificate of the oath of the witnesses given on the hearing

of the probate of the will in the county court; but you are instructed that by the law of this State it is also provided that said certificate shall have such weight as the jury shall think it may deserve; and, therefore, you are the sole judges of the weight to be given to such certificate offered in evidence in this case;" and, thereupon, the court added to the instruction as thus asked, the following words: "upon the question of whether Farrell had mental capacity to execute the will, or whether he was induced to do so by the undue influence of others." There was no error in making the modification thus indicated, because thereby the attention of the jury was merely called to the questions in issue, and those questions as to mental capacity and undue influence were the only ones, which they were called upon to decide.

The thirteenth instruction asked by the plaintiffs in error told the jury that it devolved upon the defendants, or proponents, first to make a *prima facie* case by proving that the will was, first, attested by two or more credible witnesses; second, that the witnesses saw John Farrell sign the will in their presence, or that he acknowledged the same to be his act and deed, and that they signed the same as witnesses thereto at his request; and, third, that said "witnesses must declare on oath that they believe the testator to have been of sound mind and memory at the time of signing and acknowledging the same;" and thereupon the court modified the instruction by adding the following words: "but the court instructs the jury that such proof of the execution of the will may be furnished by the deposition of the witness, or by his affidavit made at the time the will was admitted to probate in the county court." There was no error in this modification under the circumstances disclosed by the record. The attesting witnesses to the will were Harry E. Foval and Lawrence Heubener. When the will was admitted to probate, the testimony of Heubener was taken in the probate court, but Foval at that time lived in St. Louis, and his deposition was taken and produced before the probate court. The taking of this

June, '05.]       JOHNSON *v*. FARRELL.                549

deposition was authorized by the statute. Section 4 of chapter 148 in relation to wills, provides that, when any will shall be produced to the probate court for probate of the same, and any witness, attesting such will, shall reside without the limits of the State in which such will is produced for probate, it shall be lawful for the probate court, upon the application of any person asking for probate thereof, etc., to issue a commission under the seal of the court annexed to such will, etc., to take the deposition of such witness in the manner prescribed by said section. (3 Starr & Curt. Ann. Stat.—2d ed.—pp. 4033, 4034). The thirteenth instruction, as asked by plaintiffs in error, might have induced the jury to believe that the subscribing witness, Foval, must make oath to the will in open court, and the modification only served to call their attention to the fact that, under the statute, his oath might consist of a deposition, instead of oral testimony given in open court.

It is said that the court erred in refusing to give instruction numbered 10, asked by the plaintiffs in error. By this instruction the jury were told, "that the testimony of one credible witness may be entitled to more weight than the testimony of many others if, as to those other witnesses, you have reason to believe, and do believe, from the evidence and all the facts before you, that such other witnesses have knowingly testified untruthfully, and are not corroborated by other credible witness or by circumstances proved in the case." This very instruction was condemned in an opinion of the Appellate Court written by the late Justice McALLISTER in *Keller* v. *Hansen,* 14 Ill. App. 640. It was properly refused, because it omits the hypothesis that such other witnesses knowingly testified untruthfully upon a material matter. "Where a witness knowingly testifies untruthfully upon a material point, the jury may discard all his evidence, except so far as corroborated." (*O'Halloran* v. *Kingston,* 16 Ill. App. 659; *Peak* v. *People,* 76 Ill. 289; *Hartford Life Ins. Co.* v. *Gray,* 80 id. 28; *Swan* v. *People,* 98 id. 610). The instruction is

also faulty in limiting the corroboration to "other credible witness," instead of other credible evidence. There may have been credible evidence, corroborating the witness, other than the oral testimony of another witness. In other words, the proper test was whether there was a corroboration by credible evidence, whether documentary or otherwise, and not necessarily by a credible witness merely. We are of the opinion there was no error in refusing the tenth instruction.

*Third*—The record in this case shows that a motion for a new trial was made, and that the same was overruled. But the certificate of evidence does not show, nor does the decree itself show, that any exception was preserved to the decision of the court in overruling the motion for new trial. "A bill of exceptions must show the entering of a motion for new trial, its being overruled, and an exception to the order overruling the same, before an Appellate Court can consider any question of the admission or sufficiency of evidence or error in giving or refusing instructions. The failure of the bill of exceptions to show this cannot be obviated by the recitals of the judgment." (*East St. Louis Electric Street Railroad Co.* v. *Cauley,* 148 Ill. 490, and cases there cited). Where the order, overruling a motion for new trial, is not excepted to, whatever would be cause for a motion for new trial stands as if not objected to. (Ibid.) In cases of this kind, the statute requires an. issue in chancery to be made up to be tried by a jury, and, therefore, the verdict is not advisory; but the chancellor, who presides in trying the issue and in hearing the cause, can only set aside the verdict on the same grounds, and for the same reasons, as prevail in case a new trial is granted at law. (*Meeker* v. *Meeker,* 75 Ill. 260). "The verdict of a jury in the contest of a will has the same effect, and the power of a court to set it aside and grant a new trial is the same as in actions at law.— *Meeker* v. *Meeker, supra; Calvert* v. *Carpenter,* 96 Ill. 63; *Shevalier* v. *Seager,* 121 id. 564." (*Whipple* v. *Eddy,* 161 Ill. 114).

The rule—that, where the bill of exceptions or certificate of evidence fails to show any exception to the action of the court in overruling a motion for new trial, the Appellate Court will not inquire into the sufficiency of the evidence to support the judgment or decree—applies to contested will cases under our statute, as well as to ordinary actions at law. This was so held in *Tucker* v. *Cole,* 169 Ill. 150, which was a bill filed to set aside a will, and where it was said: "Where the statute requires a jury to pass on issues of fact in chancery cases, as in this class of cases, the same principle applies. When any question of fact arises in a chancery case, which the statute requires to be submitted to a jury, the verdict of the jury is necessary to a decree, and must stand, unless challenged in some method known to the law. It must be challenged by a motion for a new trial, and that must be incorporated in the certificate of evidence, as it is no part of the record. (*Fanning* v. *Russell,* 94 Ill. 386). A statutory requirement for the submission of a question of fact to a jury in a chancery proceeding is an innovation, which requires that the same principles of practice be applied as at law, and a motion for new trial at law, being no part of the record except when made so by the bill of exceptions, can in such statutory proceeding become a part of the record only by being incorporated in the certificate of evidence."

Inasmuch, therefore, as the issues here involved were under the statute submitted to the jury for their determination, and inasmuch as the same rule as above stated applies in this class of cases as in ordinary actions at law, the plaintiffs in error here are really not in a position to complain of any errors, committed by the trial court in the giving or refusing of instructions, because no exception is shown by the certificate of evidence to have been taken to the action of the trial court in overruling the motion for new trial.

For the reasons above stated, the decree of the circuit court is affirmed.                    *Decree affirmed.*